IN THE SUPREME COURT OF NORTH CAROLINA

No. 65A19

Filed 6 December 2019

IN THE MATTER OF: A.R.A., P.Z.A., Z.K.A.

On discretionary review pursuant to N.C.G.S. § 7A-31, prior to determination in the Court of Appeals, of an order entered on 12 December 2018 by Judge Ali B. Paksoy in District Court, Cleveland County. This matter was calendared for argument in the Supreme Court on 7 November 2019 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

> *Charles E. Wilson, Jr. for petitioner-appellee Cleveland County Department of Social Services.*
>
> *Parker Poe Adams & Bernstein LLP, by William L. Esser IV, for appellee Guardian ad Litem.*
>
> *Surratt Thompson & Ceberio PLLC, by Christopher M. Watford, for respondent-appellant mother.*

MORGAN, Justice.

Respondent-mother appeals from the district court's 12 December 2018 order terminating her parental rights to A.R.A. (Amy), P.Z.A. (Peter), and Z.K.A. (Zara) (collectively, the children).[1]  We affirm.

---

[1] Pseudonyms have been used to protect the identity of the juveniles and for ease of reading.

The Cleveland County Department of Social Services (DSS) has an extensive history of involvement with respondent-mother and the father[2] of the juveniles in this matter, based upon the father's substance abuse and domestic violence issues. In 2013, the father was convicted of assaulting Amy and respondent-mother. In 2015, the father assaulted Peter and threatened to kill Peter and respondent-mother. The father assaulted Amy again in 2015, resulting in a conviction of habitual misdemeanor assault. After serving time in prison for the habitual misdemeanor assault conviction, the father was released from incarceration in October 2016. In December 2016, respondent-mother allowed the father to return to the home where she lived with the children, despite his prior assaults on them and in violation of a specific condition of the father's post-release supervision conditions.

On 20 December 2016, respondent-mother voluntarily placed all three children in foster care so that the father could reside in the family home with her. On 13 January 2017, DSS obtained nonsecure custody of the children and filed a juvenile petition alleging that the children were neglected juveniles. In its petition, DSS alleged that respondent-mother and the father had repeatedly failed to comply and

---

[2] The father filed timely notice of appeal to this Court from the termination order, but subsequently filed a motion to withdraw his appeal on 10 June 2019. This Court allowed the father's motion to withdraw his appeal by order entered 1 July 2019. Although the father therefore is not a party to this appeal, his actions and presence in respondent-mother's case are highly relevant. Accordingly, we discuss the father's involvement with the matter in significant detail.

cooperate with DSS and the court to assist the parents in keeping the children safe and in avoiding the need for an out-of-home placement.

The district court entered a combined adjudication and disposition order on 24 March 2017. Based upon stipulations made by the parties, the children were adjudicated to be neglected juveniles, and custody of the juveniles was continued with DSS. Respondent-mother was ordered to complete a court-approved parenting education program; demonstrate appropriate parenting skills and an understanding of how substance abuse and domestic violence affects the children; complete an assessment by the Abuse Prevention Council (APC) or another court-approved domestic violence victims' program and comply with all recommendations for treatment; and demonstrate her ability to provide a safe and stable home environment consistent with county minimum standards and that is free from substance abuse and domestic violence for a minimum of six months. The father was ordered to comply with similar requirements, with the additional requirements of completing a substance abuse assessment; obtaining assessment through a domestic violence batterer's program; and complying with all resulting recommendations.

At a review hearing held on 14 June 2017, pursuant to N.C.G.S. § 7B-906.1, the district court found that respondent-mother and the father had continued to reside together. Respondent-mother had started parenting classes and the APC program, but had missed two sessions of the APC program.

On 1 November 2017, the district court held a permanency planning hearing pursuant to N.C.G.S. § 7B-906.1, at which respondent-mother stated that it was Amy who had wanted the father to return to the family home upon his release from prison. In an order entered on 14 November 2017, the district court found that respondent-mother and the father continued to reside together, and that they continued to deny or minimize the impact that their substance abuse and history of domestic violence had upon the children. Respondent-mother completed a parenting program in July 2017, but, at the time of the hearing, had completed only four out of the twelve sessions required by the APC program. The district court further found that respondent-mother and the father both tested positive for marijuana in September 2017. The district court adopted a primary permanent plan of reunification with a secondary permanent plan of custody with a court-approved caretaker.

On 20 December 2017, the district court held a permanency planning review hearing. The district court entered an order on 11 January 2018 finding that, although respondent-mother and the father had made some effort to comply with the court's requirements, they had not demonstrated to the court any significant progress in correcting the conditions that led to the children's removal from their care. Respondent-mother was scheduled to complete the APC program on 22 December 2017 but had failed to comply with the court's recommendations for mental health services and substance abuse treatment. Both parents continued to deny responsibility for their situation and placed the blame on the children, particularly

Amy. In its January 2018 order, the district court changed the primary permanent plan to adoption, concurrent with a secondary permanent plan of reunification.

On 22 January 2018, DSS filed a petition to terminate the parental rights of respondent-mother and the father on the grounds of neglect, willful failure to make reasonable progress, and willful failure to pay a reasonable portion of the cost of care. *See* N.C.G.S. § 7B-1111(a)(1)–(3) (2017). The district court held hearings on the 2018 dates of 18 July, 25 September, and 16 November, and on 12 December 2018, entered an order finding that the evidence in the case established facts sufficient to support the termination of respondent-mother's and father's parental rights on the grounds of neglect and willful failure to make reasonable progress. The district court further concluded that it was in the children's best interests that both parents' parental rights be terminated. Accordingly, the district court terminated the parental rights of respondent-mother and the father.

Respondent-mother gave timely notice of appeal to the North Carolina Court of Appeals. On 8 April 2019, respondent-mother filed a petition with this Court seeking discretionary review of the order terminating her parental rights, prior to a determination of the Court of Appeals. This Court allowed respondent-mother's petition for discretionary review on 1 May 2019.

The North Carolina Juvenile Code provides for a two-stage process for the termination of parental rights: adjudication and disposition. N.C.G.S. §§ 7B-1109, -1110 (2017). At the adjudicatory stage, the petitioner bears the burden of proving by

"clear, cogent, and convincing evidence" the existence of one or more grounds for termination under N.C.G.S. § 7B-1111(a). N.C.G.S. § 7B-1109(f). We review a district court's adjudication under N.C.G.S. § 7B-1109 "to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law." *In re Montgomery*, 311 N.C. 101, 111, 316 S.E.2d 246, 253 (1984) (citing *In re Moore*, 306 N.C. 394, 404, 293 S.E.2d 127, 133 (1982)). "If [the district court] determines that one or more grounds listed in section 7B-1111 are present, the court proceeds to the dispositional stage, at which the court must consider whether it is in the best interests of the juvenile to terminate parental rights." *In re D.L.W.*, 368 N.C. 835, 842, 788 S.E.2d 162, 167 (2016) (citing *In re Young*, 346 N.C. 244, 247, 485 S.E.2d 612, 614–15 (1997); N.C.G.S. § 7B-1110).

Respondent-mother challenges both grounds for termination as found by the district court. Because a finding of only one ground is necessary to support a termination of parental rights, we only address respondent-mother's argument regarding the basis for termination of her willful failure to make reasonable progress. *See In re T.N.H.*, 831 S.E.2d 54, 62 (N.C. 2019). A district court may terminate a parent's parental rights pursuant to Section 7B-1111(a)(2) if the parent "has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." N.C.G.S. § 7B-1111(a)(2).

The findings in the adjudication order indicate that the father's issues with substance abuse, the commission of domestic violence in the presence of the children, and respondent-mother's failure to protect the children by allowing the father to reside in the home were the underlying reasons for the children's removal. The district court observed that upon intervention by DSS, respondent-mother elected to voluntarily place the children in foster care "so that the . . . father could reside in the home with her." In its termination order, the district court found that respondent-mother had continued to live with the father since December 2016. Instead of protecting the children, respondent-mother continued to blame the children, as well as other people such as the father's probation officer, for the father's return to the home. She continued to defend the father throughout the termination hearing. The district court further found that because respondent-mother displayed "a lack of understanding or acceptance of responsibility for the circumstances and conditions that led to the [children's] removal," she had failed to demonstrate to the satisfaction of the district court that she had made reasonable progress under the circumstances in correcting those conditions.

On appeal, respondent-mother initially challenges several of the district court's findings of fact. Those findings of fact which she does not challenge are deemed to be supported by competent evidence and are binding on appeal. *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) (citing *Schloss v. Jamison*, 258 N.C. 271, 275, 128 S.E.2d 590, 593 (1962); *Williams v. Williams*, 97 N.C. App.

118, 121, 387 S.E.2d 217, 219 (1990)). Moreover, we limit our review of challenged findings to those that are necessary to support the district court's determination that this ground of respondent-mother's willful failure to make reasonable progress existed in order to terminate her parental rights. *In re T.N.H.*, 831 S.E.2d at 58–59 (citing *In re Moore*, 306 N.C. at 404, 293 S.E.2d at 133).

Respondent-mother challenges finding of fact 47, which states:

> That the . . . parents did not give the Social Worker their address until August 21, 2018. However, the parents have continued, th[r]ough this termination hearing, to refuse the Social Worker access to their home . . . . The [parents] have therefore not established safe and stable housing.

Specifically, respondent-mother argues that her testimony directly contradicts the court's finding that the parents refused access to the home and contends that the district court impermissibly shifted the burden of proof onto respondent-mother to prove at the termination hearing the existence of safe and stable housing. We disagree.

Other, unchallenged findings of fact indicate that respondent-mother and the father had been evicted from their residence in January 2018 and had either refused or failed to provide a new address to the DSS social worker between January and June 2018, making it difficult for the social worker to conduct the home visits necessary to assess respondent-mother's ability to provide safe and stable housing. At the termination hearing, a DSS social worker testified that respondent-mother and the father had provided a new home address to her on 21 August 2018. However,

the social worker was refused access to the home and, therefore, was unable to determine whether or not it was appropriate for the children. The social worker further testified that she made four attempts to visit the home and in all four instances, the parents canceled the visits. Although respondent-mother testified that she "was not aware of the first time that [the social worker] was gonna visit" and that she was called in to work on the other days that she was scheduled to meet with the social worker, it is well-established that a district court "ha[s] the responsibility to 'pass[ ] upon the credibility of the witnesses and the weight to be given their testimony and the reasonable inferences to be drawn therefrom.' " *In re D.L.W.*, 368 N.C. at 843, 788 S.E.2d at 167–68 (quoting *Knutton v. Cofield*, 273 N.C. 355, 359, 160 S.E.2d 29, 33 (1968)).

Thus, it was reasonable for the district court to infer that by repeatedly canceling home visits, respondent-mother and the father were preventing the social worker from having access to their home. Moreover, the district court did not improperly shift DSS' burden of proof onto respondent-mother. Rather, the court simply observed that respondent-mother had failed to rebut DSS' clear, cogent, and convincing evidence that she and the father had not established safe and stable housing for the children. *See, e.g., In re Clark*, 72 N.C. App. 118, 125, 323 S.E.2d 754, 758 (1984) (holding that instead of shifting the burden of proof, the challenged finding was "nothing more than an accurate statement of the procedural stance of the case.

The finding recites only that the respondents did not produce evidence that contradicted the allegations set forth in the petition.").

Next, respondent-mother challenges the portion of finding of fact 49 that provides that the parents "have failed to complete their case plan." Respondent-mother claims that she has completed the only case plan referenced in the underlying record.

Unchallenged findings of fact establish that respondent-mother was required to complete a parenting education program and demonstrate appropriate parenting skills, to complete an assessment through APC and comply with recommendations for treatment, and to provide a safe and stable home which was free from substance abuse and domestic violence. While the evidence shows that respondent-mother made some progress in her case plan by completing the APC program and a parenting education program, nonetheless clear, cogent, and convincing evidence also demonstrates that she failed to establish an ability to provide a safe and stable home environment for the children. Thus, these findings are supported by the evidence and establish that respondent-mother failed to complete her case plan.

Lastly, respondent-mother challenges the portion of finding of fact 51 that provides that she "has demonstrated that her relationship with the . . . father takes priority over the safety of her children." She argues that the district court erred by finding that she prioritized her relationship with the father over the safety of the

children, where there was no evidence that the parents had engaged in domestic violence or that the father had engaged in abusive behavior during visits.

The unchallenged findings of fact reveal that respondent-mother voluntarily placed the children in DSS custody so that the father could live with her, that she consistently blamed others for the father's return to the home, and that she continued to defend the father throughout the termination hearing. Additional unchallenged findings of fact demonstrate that the father denied responsibility for assaulting the children and that he failed to acknowledge responsibility for the children's removal from the home. Although the father failed to comply with his case plan, respondent-mother continued to live with the father from the time that the children were removed from the home until the termination hearing. As the trier of fact, the district court reasonably inferred that even where there was no evidence of domestic violence occurring between the parents after the children's removal, respondent-mother's actions nevertheless indicated that she placed the importance of her relationship with the father over the safety of her children.

Secondly, respondent-mother contends that the district court erred by concluding that a ground existed to terminate her parental rights under N.C.G.S. § 7B-1111(a)(2) where she complied with court-ordered services. Respondent-mother submits that she made "reasonable progress under the circumstances to correct those conditions concerning inappropriate parenting choices and exposure of the children

to past domestic violence which were the grav[a]men of the concerns originally raised in December 2016." We are not persuaded by this assertion.

Respondent-mother's argument disregards the primary reason for the removal of her children—the presence of the father in the home. The district court's findings of fact demonstrate that respondent-mother failed to protect her children by allowing the father, who had assaulted Amy, Peter, and respondent-mother, to return to the family home. Instead, respondent-mother voluntarily placed the children into DSS custody so that she could live with the father. She continued to live with him through the time of the termination hearing. The district court further found that, at the time of the termination hearing, respondent-mother continued to deny the effect the father's domestic abuse had on the children and to blame others, including the children, for the father's return to the home. Throughout the termination hearing, respondent-mother displayed a lack of understanding or acceptance of responsibility for the conditions that led to the children's removal. Based on the foregoing, we conclude that the district court's findings support its conclusion that respondent-mother failed to make reasonable progress under the circumstances toward correcting the conditions that led to the removal of the children.

Finally, respondent-mother argues that the district court abused its discretion by concluding that it would be in Peter's best interest that respondent-mother's parental rights be terminated. She asserts that several of the district court's dispositional findings of fact are not supported by the evidence and that the district

court failed to make sufficient findings regarding the factors set forth in N.C.G.S. § 7B-1110(a).

Once the district court finds at least one ground to terminate parental rights pursuant to N.C.G.S. § 7B-1111(a), it proceeds to the dispositional stage where it must "determine whether terminating the parent's rights is in the juvenile's best interest" based on the following factors:

> (1) The age of the juvenile.
>
> (2) The likelihood of adoption of the juvenile.
>
> (3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
>
> (4) The bond between the juvenile and the parent.
>
> (5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
>
> (6) Any relevant consideration.

N.C.G.S. § 7B-1110(a). The district court's assessment of a juvenile's best interest at the dispositional stage is reviewed only for abuse of discretion. *In re D.L.W.*, 368 N.C. at 842, 788 S.E.2d at 167 (citations omitted). " '[A]buse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision.' " *In re T.L.H.*, 368 N.C. 101, 107, 772 S.E.2d 451, 455 (2015) (quoting *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988)).

First, respondent-mother disputes some of the findings of fact contained in the dispositional portion of the district court's order. She contends that a portion of finding of fact 69, stating that the parents had been advised of Peter's appointments with his most recent therapist, was not supported by the evidence. Respondent-mother also posits that portions of findings of fact 70, 71, and 74 are not proper findings of fact because they are not determinations made from logical reasoning or because they lack evidentiary support. However, assuming *arguendo* that the challenged findings are erroneous, any such error would not support the conclusion that the district court abused its discretion in light of the evidence presented at disposition and the court's remaining findings, as we shall now address.

Respondent-mother argues that the district court did not make sufficient findings regarding the factors set forth in N.C.G.S. § 7B-1110(a). Specifically, she contends that the district court should have made findings concerning the likelihood of Peter's adoption; the bond between Peter and respondent-mother; and the quality of the relationship between Peter and the proposed adoptive parent, guardian, custodian, or other placement. *See* N.C.G.S. § 7B-1110(a)(2), (4), (5).

"It is clear that a [district] court must *consider* all of the factors in section 7B-1110(a). . . . The statute does not, however, explicitly require written findings as to each factor." *In re A.U.D.*, 832 S.E.2d 698, 702 (N.C. 2019). We agree with the Court of Appeals that the district court is only required to make written findings regarding those factors that are relevant. *In re D.H.*, 232 N.C. App. 217, 221, 753 S.E.2d 732,

735 (2014). We also agree with the Court of Appeals that "a factor is 'relevant' if there is 'conflicting evidence concerning' the factor, such that it is 'placed in issue by virtue of the evidence presented before the [district] court[.]' " *In re H.D.*, 239 N.C. App. 318, 327, 768 S.E.2d 860, 866 (2015) (quoting *In re D.H.*, 232 N.C. App. at 222 n.3, 753 S.E.2d at 735 n.3).

In the present case, the transcript of the hearing demonstrates that the district court properly considered the appropriate factors. The district court found that Peter was almost nine years old and that the termination of respondent-mother's parental rights would aid in achieving the permanent plan of adoption. *See* N.C.G.S. § 7B-1110(a)(1), (3). With regard to N.C.G.S. § 7B-1110(a)(2), there was no conflict in the evidence regarding the likelihood of Peter's adoption. The DSS social worker testified that, although Peter was not currently in a pre-adoptive placement, the goal was to get him to a "point of stability that we can secure a pre-adoptive placement for him." The social worker went on to testify that there would be a greater likelihood for Peter to be adopted or to be in an adoptive placement once he became available for adoption, and that there was no reason to believe that he could not eventually be adopted. We believe that the district court made the requisite finding regarding the factor addressed in N.C.G.S. § 7B-1110(a)(4) when it found that any previous bond or relationship with the respondent-mother was outweighed by Peter's need for permanence. Lastly, as to N.C.G.S. § 7B-1110(a)(5), the district court was not required to make a finding regarding the quality of the relationship between Peter

and the proposed adoptive parent, guardian, custodian, or other permanent placement, since there was no potential adoptive parent at the time of the hearing. *See In re D.H.*, 232 N.C. App. at 223, 753 S.E.2d at 736 ("[T]he absence of an adoptive placement for a juvenile at the time of the termination hearing is not a bar to terminating parental rights.").

In addition to the statutory factors set out in N.C.G.S. § 7B-1110(a)(1)–(5), the district court considered other relevant factors, as it was permitted to do under N.C.G.S. § 7B-1110(a)(6), such as the facts that Peter had been in his therapeutic placement since September 2018 and was doing well in the placement; Peter had a strong bond with his current foster family and was forming a long-term attachment to the family; Peter was receiving structure and stability from the foster family; Peter needed permanence and continued therapy; and respondent-mother was no longer participating in Peter's therapy and had not called to inquire about Peter's welfare. Based on the foregoing analysis, we are satisfied that the district court's conclusion that termination of respondent-mother's parental rights was in Peter's best interest was neither arbitrary nor manifestly unsupported by reason.

For the reasons stated above, we affirm the 12 December 2018 order of the district court terminating respondent-mother's parental rights.

AFFIRMED.